*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY and KATHY BERRY, | ) ) ) | Supreme Court No. S-16509 |
| Appellants, | ) ) | Superior Court No. 4BE-04-00103 CI |
| v. | ) ) | O P I N I O N |
| MARY KENICK and ANGELINA TRAILOV, | ) ) ) | No. 7331 – January 25, 2019 |
| Appellees. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Bethel, Charles W. Ray Jr. and Bethany S. Harbison, Judges.

Appearances: Gary A. Zipkin and Kristin E. Bryant, Guess & Rudd, P.C., Anchorage; Rebecca J. Hozubin, Hozubin Moberly Lynch & Associates, Anchorage; and Peter H. Klee, Sheppard, Mullin, Richter & Hampton, LLP, San Diego, California, for Appellant Allstate Insurance Company. Alfred Clayton, Jr., Clayton & Diemer, LLC, Anchorage, for Appellant Kathy Berry. Mark A. Sandberg, Law Office of Mark A. Sandberg, Anchorage; Dennis Mestas, Law Office of Dennis Mestas, Anchorage; and Myron E. Angstman, Angstman Law Office, Bethel, for Appellees Mary Kenick and Angelina Trailov.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

CARNEY, Justice.

## I. INTRODUCTION

We are asked to determine the preclusive effect of a declaratory judgment in favor of an insurance company against its insured in federal court in a subsequent state court proceeding. The superior court concluded that the declaratory judgment had no preclusive effect on a negligent adjustment action brought in state court by the insured's assignees against the insurance company and its claims adjuster. The state action proceeded to an 11-day jury trial ending with a multi-million dollar verdict against the insurance company and its claims adjuster.

The insurance company and the adjuster raise a number of issues on appeal, but it is necessary for us to decide only one: the preclusive effect of the federal declaratory judgment. The declaratory judgment determined that the insurance company and the adjuster acted reasonably when they offered policy limits to settle the underlying claim against the insured. Because the insurance company's and adjustor's reasonableness in adjusting the insurance claim is a necessary element of a negligent adjustment tort, we hold that the assignees of the insured were precluded from relitigating this issue. The superior court therefore erred in denying the insurance company's and claims adjuster's motions for summary judgment, and we vacate the judgment against them.

## II. FACTS AND PROCEEDINGS

### A. Facts

In mid-September 2002 Charles Herron, who was under the influence of alcohol and not old enough to legally possess or consume it, was involved in a single-vehicle accident in Bethel. A 15-year-old passenger in Herron's vehicle, Angelina Trailov, was injured.

Herron was insured by Allstate Insurance Company. The policy provided liability coverage of up to $100,000 per person/$300,000 per occurrence, medical

payments coverage of $25,000 per person, and underinsured motorist (UIM) coverage of up to $100,000 per person/$300,000 per occurrence.

Shortly after the accident Allstate was notified of Trailov's injuries and her liability claim against Herron. By the end of September Allstate received notice that attorney Michele Power represented Trailov in the matter. Allstate assigned Trailov's bodily injury claim to its in-house claims adjuster, Kathy Berry. Over the next few months Berry and Power corresponded regarding Trailov's claim; much of their communication related to obtaining medical records documenting Trailov's injuries.

Power made a "policy limits demand plus attorney's fees, costs and interest" for Trailov's claim in a February 14, 2003, letter to Berry. In the same letter Power also for the first time asserted a separate negligent infliction of emotional distress (NIED) claim on behalf of Mary Kenick, Trailov's mother. Power made "a policy limits demand plus attorney's fees, costs and interest" for Kenick's NIED claim.

In March Berry responded to Power's February demand letter. Berry requested additional information about any treatment Trailov had received since the accident. She also asked for information about Kenick's NIED claim.

Power responded in April that Kenick had taken a new job because of her emotional distress from the accident (and had taken a substantial pay cut); however, Power noted that Kenick had not sought counseling. Power asserted that Trailov had been absent-minded and forgetful since the accident and disclosed for the first time that Trailov was suffering back pain from the accident. In closing Power wrote: "While the offer dated February 14, 200[3], remains open, it will be revoked on May 16, 2003, and a complaint will be filed, unless there is some discussion regarding pre-filing resolution."

On May 9 Berry responded to Power that "[w]e are in the process of completing our evaluation of Angelina Trailov's claim and anticipate responding to your

demand by your May 16, 2003 deadline." Berry stated she needed additional support for Kenick's NIED claim.

On May 15 Power sent Berry two pay stubs for Kenick as proof of her NIED claim; there was no mention of the May 16 deadline in the letter. On May 16 Berry sent another letter to Power requesting additional information about Kenick's job change and its relationship to the NIED claim. Berry also advised that Allstate's evaluation of Trailov's claim was not complete: "Our evaluation will be completed by the end of the month, and I am hoping to respond to your demand sooner than that."

Berry referred the entire claim to a higher-ranking claims adjuster for evaluation. That adjuster directed Berry to open a UIM claim for Trailov because, based upon her knowledge of similar claims in the Bethel area, Trailov would likely receive the $100,000 policy limit on the UIM claim as well as the underlying liability limit of $100,000. But the second adjuster suggested offering $10,000 for the NIED claim because she did not believe there was sufficient information to determine its value.

On May 29, 2003, an attorney from the Law Office of Dennis Mestas wrote to Berry that he had been retained as co-counsel to file suit on behalf of Kenick and Trailov. The letter stated that the policy limits offer had lapsed on May 16 and that no further policy limits offers would be made or accepted. The following day Berry wrote to Power offering to settle Trailov's bodily injury claim for $112,500, encompassing policy limits plus attorneys' fees. Berry also offered to settle Kenick's NIED claim for $10,000 in an effort to resolve the matter expeditiously, but she advised that if the offer was not accepted she would need additional documentation for the claim.

## B.    Proceedings

Three pleadings, and the proceedings related to them, define the current appeal. The first pleading is Kenick's and Trailov's personal injury and NIED complaint against Herron filed in June 2003 in the superior court in Bethel. The second is

Allstate's March 2004 federal complaint against Herron for declaratory relief. And the third pleading is the complaint filed by Kenick and Trailov as Herron's assignees against Allstate in April 2004 in the superior court in Bethel.

In their June 2003 personal injury complaint against Herron, Kenick and Trailov sought both compensatory and punitive damages for injuries and distress resulting from the September 2002 accident. Herron resolved Kenick and Trailov's personal injury action against him in early April 2004 by signing a consent to entry of judgment. Herron consented to judgment in favor of Kenick, on behalf of her minor daughter Trailov, for $1,750,000 on Trailov's liability claims and attorneys' fees and consented to judgment in favor of Kenick for $187,500 on her NIED claim and attorneys' fees. The total judgment entered against Herron was $1,937,500. He also assigned to Kenick and Trailov any and all legal claims he possessed against Allstate. Herron and Kenick, individually and on behalf of Trailov, also entered into a covenant not to execute on any of Herron's assets other than the potential proceeds from the assigned claims against Allstate.

Meanwhile in early March 2004 Allstate filed a complaint for declaratory relief in the U.S. District Court for the District of Alaska in anticipation of Herron confessing judgment in the accident-related personal injury suit. Allstate requested a declaration that "its good faith attempt to settle Trailov and Kenick's claims satisfied its obligation to its insured, and a further declaration that Allstate [wa]s not obligated to pay any portion of the confessed judgment that exceed[ed] the limit of the bodily injury coverage afforded Herron under the [p]olicy." In late May, due to Herron's April confession of judgment and assignment of claims, Allstate amended its federal complaint for declaratory relief. The only material addition was the statement that Herron had confessed judgment and assigned his rights against Allstate.

In April 2004, shortly after Herron's confession of judgment, Kenick and Trailov, as his assignees, filed a complaint against Allstate and Berry in the Bethel superior court. Kenick and Trailov asserted that Allstate and Berry had negligently and recklessly adjusted the claims arising from the accident and by doing so they had exposed Herron to a large nondischargeable liability. Kenick and Trailov argued that as Herron's assignees they were entitled to compensatory damages in the amounts agreed to in the confessed judgments and to punitive damages in an amount to be determined by a jury. The superior court action was stayed during the pendency of the federal declaratory action.

In late June 2004 Herron answered Allstate's declaratory complaint; Kenick and Trailov were not parties to that action. Herron asserted a number of affirmative defenses, including an allegation that "the plaintiff's damages, if any, are the result, in whole or in part, of its negligence, or that of others for whom the defendant is not responsible." He also alleged that Allstate had breached the insurance contract.

In early December 2004 Allstate filed a second amended complaint for declaratory relief, seeking declarations that Herron breached the insurance contract when he confessed judgment and assigned his rights and that his "breach was not excused by any prior material breach by Allstate" and thus "voided the insurance contract." Later that month Allstate filed a notice ratifying Berry's conduct and actions as an Allstate employee.

Berry was Allstate's first witness in the federal trial, held in June 2008. After describing her employment in 2002-03, she discussed her evaluation of Kenick's and Trailov's claims. She was cross-examined about actions she took relating to her determination of the claims' reserves, company standards and legal requirements for documenting her file, and the language of her communications with Power from February to May 2003. Berry was also questioned about alleged delays in obtaining

medical records relevant to evaluating Trailov's claim; her delay in responding to Power's communications; the lack of documentation about when she evaluated Trailov's claim; and the lack of an apparent reason why Trailov's claim could not have been evaluated by May 16, Power's purported deadline to avoid a lawsuit. In response to questioning about the meaning of Power's April letter, Berry testified that she believed it required either that Allstate agree to settle for policy limits or that it engage in settlement discussions. Berry testified that she believed that discussion of settlement in her May 9 and May 16 letters satisfied the terms of the April letter.

Allstate called Charles Bean as an expert in handling insurance claims. Bean testified that Allstate's claims handling from February 14 to May 31, 2003, met industry standards. Bean also testified to his understanding of the communications between Berry and Power, including the meaning of Power's April letter. Bean opined that Berry's evaluation of Trailov's claim was of a high quality and that Berry's documentation in the claims log was acceptable. Bean also believed Allstate had acted appropriately to protect Herron's interests. On cross-examination Bean agreed that Allstate had a duty to protect Herron and conduct an investigation. He conceded that it was unclear when Berry performed her evaluation of Trailov's claim and that Allstate "could" have done the evaluation prior to May 16.

Allstate also called Power as a witness. Power conceded that her April letter was too imprecise for Berry to rely on and that the letter's meaning was unclear.

At the close of evidence, after instructing the jury that Allstate had the burden of proof in the matter, the court further instructed that:

> An insurer is bound to exercise that degree of care which an insurer of ordinary prudence would exercise. Insurance is a profession with skill in the investigation and settlement of liability claims. It is not an extraordinary degree of care, but

the care that a reasonable insurer is required to exercise under the circumstances.

The court next instructed the jury:

> In response to a policy limits demand, an insurer owes a duty to its insured to offer the full policy limits available when the insurer knows or should know that there is a substantial likelihood of an excess verdict against that insured.

These were the only substantive legal instructions given to the jury in the 13 closing instructions.

Only a single question was submitted to the jury: "Considering all the facts and circumstances contained in the evidence submitted to you, did Allstate act reasonably by offering policy limits on May 30, 2003?" The jury answered the question "yes" and returned the verdict in favor of Allstate.

The federal court entered judgment that "Allstate did act reasonably by offering policy limits on May 30, 2003." Allstate moved to amend the judgment; the federal court granted Allstate's motion in February 2009. The amended judgment stated:

> 1. The jury returned a verdict in favor of Allstate on June 11, 2008, finding that under all the facts and circumstances Allstate acted reasonably by offering policy limits on May 30, 2003.
>
> 2. It is undisputed that Herron breached the insurance contract by consenting to entry of judgment and assigning his rights without Allstate's consent.
>
> 3. Pursuant to the jury's verdict, Herron's breach was not excused by any prior breach by Allstate.
>
> 4. Herron's breach voided the insurance policy's liability coverage.
>
> 5. Herron's assignment of rights to Trailov and Kenick is null and void because Herron had no rights to assign as of the date of the assignment.

Herron appealed to the Ninth Circuit Court of Appeals in March 2009.  He argued that the district court's exercise of jurisdiction was improper, the court erred in not granting Herron's motions for summary judgment or directed verdict, the court erred in excluding evidence concerning other claimed breaches by Allstate, and the judgment was improperly amended.

The Ninth Circuit ruled in March 2011 that the district court had not improperly exercised its jurisdiction over Allstate's suit for declaratory relief.[1]  After addressing Herron's argument that the district court had improperly exercised jurisdiction, the Ninth Circuit stated:

> The issues in this suit and the tort suit overlap solely because Kenick and Trailov's rights against Allstate are entirely derivative of Herron's rights under his insurance agreement.  The jury's declaration of Allstate's reasonableness pertains to Alaska law defining an insurer's contractual obligations to its insured, not tort law.  That declaration may well be fatal to Kenick and Trailov's tort claims against Allstate, but only because an unexcused breach of the contract by Herron may have thus prevented him from assigning any rights against Allstate to Kenick and Trailov in the first place.  At bottom, Allstate's suit sounds in contract, not tort, regardless whether the merits of this action have become entwined with a defense Allstate may potentially raise to Kenick and Trailov's derivative tort action.[2]

The Ninth Circuit held that the district court had abused its discretion by amending the judgment to include paragraphs 4 and 5.[3]  The jury had not considered

---

[1]    *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1108 (9th Cir. 2011).

[2]    *Id.* (citing *Cont'l Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281, 293 (Alaska 1980)).

[3]    *Id.* at 1112-13.

whether Herron's breach prejudiced Allstate enough to void the insurance policy's liability coverage.[4]  And without a finding of prejudice, Allstate was not relieved of its liability up to the policy limits.[5]  The appeals court then found that entering paragraph 5 of the judgment was an abuse of discretion, stating:  "[B]ecause Allstate remains liable to Herron within the insurance policy's limits, Herron retained assignable rights against Allstate to the extent of that liability."[6]

On remand the district court granted partial summary judgment on the issue of prejudice in favor of Herron.  The district court found that, as a matter of law, Herron's confession of judgment had not prejudiced Allstate and thus had not voided Allstate's obligation to indemnify him up to the policy limits.  The court entered a second amended final judgment in July 2012.  It removed paragraphs 4 and 5 of the first amended final judgment and added a new paragraph 4:  "Herron's breach did not prejudice Allstate, therefore it did not void the liability portion of the insurance policy."

Following the conclusion of the federal case, the superior court lifted its stay of the state proceedings.  In July 2012 Allstate moved to dismiss the state court case, arguing that Herron's assignment of claims to Kenick and Trailov was invalid and that Kenick's and Trailov's claims had been conclusively determined in the federal case.  Berry joined Allstate's motion.  Kenick and Trailov responded that the federal court's holding that Allstate was not prejudiced by Herron's breach meant that the assignment had not been voided.  They filed a cross-motion for summary judgment, arguing they were not precluded from litigating their negligent adjustment claim because this claim

---

[4]     *Id.*

[5]     *Id.* at 1113.

[6]     *Id.*

had not been adjudicated on the merits to a final judgment in the federal declaratory action.

In March 2013 the superior court denied Allstate's motion — which it treated as a summary judgment motion[7] — and granted Kenick and Trailov's cross-motion for summary judgment. The court found that identical issues had not been decided in the federal declaratory action; it therefore held that issue preclusion did not preclude litigation of the negligent adjustment claim. The court stated that the federal court had not "decide[d] any issues of Alaska law outside of that defining Herron and Allstate's contractual relationship" and that the issue of negligence was not identical to any issue decided in the federal declaratory action.[8]

Allstate and Berry both appeal the superior court's ruling; they argue that the determination of their reasonableness — and by implication whether they were negligent — was precluded by the federal declaratory judgment. Because we hold that Kenick and Trailov were precluded from relitigating the issue of Allstate and Berry's reasonableness as it relates to the negligent adjustment claim, we do not discuss any later superior court proceedings.

---

[7]     The court noted that because matters outside of pleadings were presented in Allstate's motion to dismiss, it was treating it as a motion for summary judgment. *See* Alaska R. Civ. P. 12(b).

[8]     Allstate and Berry continued to raise arguments throughout the subsequent state court proceedings that Kenick and Trailov's negligent adjustment claim was precluded by the federal decision. None of the court's later rulings disturbed the reasoning outlined in the court's order denying Allstate's motion to dismiss and granting Kenick and Trailov's cross-motion for summary judgment.

## III. STANDARD OF REVIEW

The applicability of issue preclusion "is a question of law subject to independent review."[9]  "We therefore review de novo whether the elements of [issue preclusion] are met."[10]

## IV. DISCUSSION

Issue preclusion "bars the relitigation of issues actually determined in [earlier] proceedings."[11]  Issue preclusion prohibits a party from relitigating an issue of fact if the following four factors are met:

> (1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action;
>
> (2) the issue precluded from relitigation is identical to the issue decided in the first action;
>
> (3) the issue was resolved in the first action by a final judgment on the merits; and
>
> (4) the determination of the issue was essential to the final judgment.[12]

### A. Kenick And Trailov Are In Privity With Herron, Who Was A Party To The Federal Action.

Kenick and Trailov concede that they are in privity with Herron as his assignees and that he was a party to the federal declaratory judgment action.  The first

---

**9** *Lane v. Ballot*, 330 P.3d 338, 341 (Alaska 2014).

**10** *Id.*

**11** *Latham v. Palin*, 251 P.3d 341, 344 (Alaska 2011) (alteration in original) (quoting *Jeffries v. Glacier State Tel. Co.*, 604 P.2d 4, 8 n.11 (Alaska 1979)).

**12** *Id*. (quoting *Midgett v. Cook Inlet Pre-Trial Facility*, 53 P.3d 1105, 1110 (Alaska 2002)).

factor is therefore satisfied. Their concession is also in accord with the approach adopted by the Restatement (Second) of Judgments.[13]

> B.      The Issue Of "Reasonableness" Is Identical In Both The Federal And State Proceedings.

We now consider the second issue preclusion factor: identity of the issue. In the federal proceeding, the jury was asked to determine whether Allstate and Berry acted reasonably by offering policy limits on May 30. The jury was instructed on the standard of care for an insurer in adjusting claims and on an insurer's duties to respond to a policy limits demand and protect its insured. The jury made a factual finding that Allstate acted reasonably by offering the policy limits on May 30. The question before us is whether this determination of reasonableness is identical to the determination of reasonableness required in the state court action.

In evaluating this factor we have applied the analysis suggested in commentary to the Restatement (Second) of Judgments for resolving identity issues.[14] To determine whether the issue resolved in the federal action is identical to the issue in the state action, we weigh a number of considerations, including:

> Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first? Does the new evidence or argument

---

[13]      "A judgment in an action that determines interests in . . . personal property . . . [h]as preclusive effect upon a person who succeeds to the interest of a party to the same extent as upon the party himself." RESTATEMENT (SECOND) OF JUDGMENTS § 43 (AM. LAW INST. 1982). "A judgment in an action by either the assignee or the assignor against the obligor of an obligation that has been assigned precludes a subsequent action on the obligation by the other of them if the person maintaining the action had power to discharge the obligation." *Id.* § 55.

[14]      *Powercorp Alaska, LLC. v. Alaska Energy Auth.*, 290 P.3d 1173, 1182 (Alaska 2012), *as amended on reh'g* (Jan. 7, 2013) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. c (AM. LAW INST. 1982)).

involve application of the same rule of law as that involved in the prior proceeding? Could pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? How closely related are the claims involved in the two proceedings?[15]

No party has identified, nor can we discern, any difference between the pretrial preparation and discovery for the federal action and what could reasonably be expected in the state court action.[16]

The federal jury was tasked with deciding a single issue of fact: it found that Allstate had acted reasonably by offering the policy limits on May 30. This factual finding allowed the federal court to conclude that Herron's breach of the contract was not excused. But the jury instructions indicate that the determination of reasonableness foreclosed any possibility of a claim that Allstate had breached the covenant of good faith and fair dealing.

As we discussed in *Lockwood v. Geico General Insurance Co.*, all contracts carry an implied duty of good faith and fair dealing.[17] This gives the insured both a cause of action that sounds in contract and one that sounds in tort.[18] In *Lockwood* we stated that "our precedent makes clear that the element of breach at least requires the insured to show that the insurer's actions were objectively unreasonable under the

---

[15]     *Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. c (AM. LAW INST. 1982)).

[16]     *Cf. id.* at 1182-83. During the state court trial it was clear there was a tremendous amount of overlap of discovery and the evidence that was presented. However, in analyzing this issue, we place ourselves in the same position as the superior court at the time of the motion to dismiss and cross-motion for summary judgment.

[17]     323 P.3d 691, 697 (Alaska 2014).

[18]     *Id.* at 697 n.19.

circumstances."[19]   The parties do not appear to dispute that the federal jury's determination that Allstate acted reasonably in offering a policy limits demand on May 30 forecloses Kenick and Trailov from pursuing a tort claim based on a breach of the duty of good faith and fair dealing.

But the jury's finding that Allstate acted reasonably likewise forecloses any claim for negligent adjustment.  To find that Allstate or Berry committed the tort of negligent adjustment, a fact finder would need to find that Berry had been negligent — that she had breached the tort duty of reasonable or ordinary care[20] — by not agreeing to settle for policy limits before May 30.  A finding that she was negligent would be inconsistent with the federal jury's determination that Allstate, which had ratified its employee Berry's conduct, acted reasonably by offering policy limits on May 30.

While the evidence and argument for each involve application of different rules of law, Kenick's and Trailov's two claims and legal theories remain entwined.  The tort of negligent adjustment is an independent cause of action that may be separate from a claim based on the insurance contract, but a negligent adjustment claim stems in part from the contractual relationship between an insured and an insurance company.[21]  An

[19]      *Id.* at 697.

[20]      *See C.P. ex rel. M.L. v. Allstate Ins. Co.*, 996 P.2d 1216, 1220 (Alaska 2000) (quoting *Cont'l Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281, 287 (Alaska 1980)) (stating that an insurance adjuster "could be held liable for negligence arising out of a breach of the general tort duty of ordinary care").

[21]      *Id.* at 1220-22 (Alaska 2000) ("[W]e recognize[] that an insurance adjuster owes a duty of care to the insured which is independent of any contractual obligation arising out of the insurance policy, and that a breach of this duty is actionable." (quoting *Sauer v. Home Indemn. Co.*, 841 P.2d 176, 184 (Alaska 1992))); *Cont'l Ins. Co.*, 608 P.2d at 287-88, 288 n.10 (stating adjuster "could not be held liable for a breach of the fiduciary duty of good faith arising out of the insurance contract, but he could be held
(continued...)

adjuster's duties to the insured do not arise from an insurance contract because an adjuster is not a party to the contract. But for the adjuster to owe the insured a duty to act with reasonable care, a contractual relationship must exist.[22] Absent a contractual relationship between an insurance company and an insured, an adjuster would owe no duty. Kenick and Trailov focus on the fact that Berry was not a party to the federal action, but they ignore that Allstate ratified Berry's conduct and that Berry's actions as Allstate's in-house adjuster were at issue in the federal action. It was her conduct on Allstate's behalf that the federal jury found to be reasonable.

The evidence and argument to be advanced in the state proceeding overlap significantly with that which was advanced in the federal declaratory action.[23] The focus of the litigation in both proceedings, as shown by the available record of the federal proceeding and as outlined in the underlying complaint, is Berry's actions or omissions in evaluating Trailov's bodily injury claim and Kenick's NIED claim, with particular focus on what Berry did after receiving Power's February demand letter and the letter with the May 16 deadline.[24]

Weighing all of these considerations, we hold that the federal jury's determination that Allstate acted reasonably in offering policy limits on May 30 encompasses the issue of fact that Berry, as Allstate's employee, acted reasonably in offering policy limits on May 30.

---

[21]   (...continued)
liable for negligence arising out of a breach of the general tort duty of ordinary care").

[22]   *Cf. C.P. ex rel. M.L.*, 996 P.2d at 1220-21.

[23]   *See Powercorp Alaska, LLC v. Alaska Energy Auth.*, 290 P.3d 1173, 1182 (Alaska 2012), *as amended on reh'g* (Jan. 7, 2013).

[24]   *Cf. id.* at 1182-83.

**C.    The Issue Of Allstate's Reasonableness Was Resolved In A Final Judgment On The Merits.**

Kenick and Trailov argue that "no tort issues were decided in the federal case, [only] a series of contract issues were decided." But this argument seemingly conflates the identity of issues factor with the final judgment factor for determining whether issue preclusion applies.[25] The relevant inquiry here is whether the issue had "actually be[en] litigated."[26] We have identified the issue of fact — that Allstate acted reasonably. Because this issue was determined by a federal jury, "the issue was resolved in the first action by a final judgment on the merits."[27]

**D.    The Determination Of Allstate's Reasonableness Was Essential To The Final Judgment.**

The fourth and final factor in determining whether issue preclusion applies is whether the issue was essential to the final judgment in the federal case. Allstate's reasonableness was the only issue of fact resolved by the federal jury. It therefore was essential to the federal court's declaration that Allstate had not breached the insurance contract and that Herron's breach was not excused.[28] If the federal jury had returned a verdict that Allstate had not acted reasonably, Allstate would have been in breach and Herron's breach would have been excused.

---

[25]    As we noted, the second factor of the four-factor issue preclusion test is whether the precluded issue is "identical to the issue decided in the first action"; the third factor is whether that issue "was resolved in the first action by a final judgment on the merits." *See supra* 12 (quoting *Latham v. Palin*, 251 P.3d 341, 344 (Alaska 2011) (quoting *Midgett v. Cook Inlet Pre-Trial Facility*, 53 P.3d 1105, 1110 (Alaska 2002))).

[26]    *In re Adoption of A.F.M.*, 15 P.3d 258, 268 n.46 (Alaska 2001).

[27]    *Id.*

[28]    *Cf. Powercorp Alaska, LLC.*, 290 P.3d at 1183.

Because all four factors of issue preclusion are met, Kenick and Trailov are precluded from relitigating the issue of reasonableness. An essential element of the tort of negligent adjustment is the lack of reasonable care; the federal jury found that there was no such lack.[29] The superior court erred in denying Allstate and Berry's motion to dismiss.

## V.    CONCLUSION

We VACATE the jury's verdict and resulting judgment. We REVERSE the superior court's order denying the motion to dismiss and REMAND for dismissal of the complaint consistent with this opinion.

---

[29]    *See C.P. ex rel. M.L. v. Allstate Ins. Co.*, 996 P.2d 1216, 1220-21 (Alaska 2000); *Cont'l Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281, 287 (Alaska 1980).