*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BLAKE J., | ) | |
| | ) | Supreme Court No. S-18415 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-18-07727 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF HEALTH & SOCIAL SERVICES, | ) | No. 7710 – August 23, 2024 |
| OFFICE OF CHILDREN'S SERVICES; | ) | |
| PHILIP KAUFMAN; JOHN DOES 1-10; | ) | |
| and ALEXA J., | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Gregory Miller, Judge.

Appearances: Robert D. Stone, Law Office of Robert Stone, LLC, Anchorage, for Appellant. Kimberly D. Rodgers, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellees State of Alaska, Department of Health & Social Services, Office of Children's Services and Philip Kaufman. No appearance by Appellee Alexa J.

Before: Maassen, Chief Justice, and Borghesan, Henderson, and Pate, Justices. [Carney, Justice, not participating.]

PATE, Justice.

## I.    INTRODUCTION

A child in the custody of the Office of Children's Services (OCS) suffered horrific abuse at the hands of his adoptive mother.  Days before his 21st birthday, the child filed a tort suit against OCS and his adoptive mother.

OCS moved to dismiss the lawsuit as untimely.  The child opposed and raised three reasons why the statute of limitations should not bar his complaint:  (1) the statute of limitations was tolled while he was in OCS custody until age 19, (2) collateral estoppel should prevent OCS from arguing he was competent to file suit, and (3) equitable tolling should apply.  The superior court rejected these arguments and concluded the child's suit was untimely.  Seeing no error, we affirm the superior court.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In 1999, when Blake J. was approximately two years old, he was adjudicated a child in need of aid and placed in OCS custody.[1]  After a series of foster care placements, OCS placed Blake and his older sister in foster care with Alexa J. in 2003.  Alexa subsequently adopted both of them in 2004, when Blake was 6 years old.  At the time of Blake's adoption, Alexa had already adopted five other children.  When Blake was 13, OCS removed him from Alexa's custody and returned him to foster care as a result of horrific abuse in the home.

The conditions Blake endured while in Alexa's custody were described by one expert witness as torture.  Alexa neglected, abused, and routinely denied food to Blake and his siblings.  Alexa also administered unnecessary antipsychotic drugs and effectively held the children out of school.  Blake has been diagnosed with post-traumatic stress disorder arising from the abuse and neglect he endured.  Alexa was subsequently convicted of two counts of first-degree child endangerment.

---

[1]    We use pseudonyms for the child and the adoptive mother to protect the child's privacy.

After he was removed from Alexa's custody in 2011 and until the age of 19, Blake remained in OCS custody in several foster placements. Between 2011 and 2014, Blake's sister and several of the other children Alexa had adopted sued OCS, alleging the agency failed to investigate before placing the children with Alexa and failed to follow up on reports of abuse. Both Blake's biological mother and his OCS caseworker encouraged him to participate in the lawsuit. Although Blake was informed of the deadline to file suit and briefly agreed on multiple occasions to join the suit, he never did so. After Blake turned 18 he retained his own attorney who informed Blake's siblings' counsel that he "intend[ed] to file a lawsuit against the [OCS], making many of the same arguments" the siblings raised. Meanwhile, the siblings' lawsuit settled in 2018 without Blake's participation.

Although Blake turned 18 on July 2, 2015, he remained in OCS custody for another year until his 19th birthday. After age 19, the child's consent is required for OCS to retain custody,[2] and Blake did not consent. OCS thus petitioned to appoint a conservator to manage his finances and a limited guardian to manage Blake's housing and benefits. At this point, Blake was employed full time, planning to finish high school, and living in an extended housing program offered by OCS. OCS explained that it sought a guardian to assist Blake in securing housing "as he transitions to independence as an adult and out of OCS custody."

The superior court held a hearing on both petitions in June 2016. In advance of the hearing, both OCS and Blake agreed that the conservatorship and limited guardianship were necessary. The court reviewed a neuropsychological evaluation that concluded Blake had "highly impaired judgment abilities," was "incapable of competitive employment," and was not capable of "making informed decisions regarding his care or finances or legal issues." It also reviewed a court visitor's report,

---

[2]     *See* AS 47.10.100(a), .080(c).

which likewise concluded that Blake had "limited social skills" and lacked the "skill set to live independently or secure his own housing." The superior court granted both petitions, finding Blake was "able to perform some, but not all, of the functions necessary to care for himself," and appointed the Office of Public Advocacy as Blake's conservator and partial guardian.

In August 2016, Blake formally withdrew his consent to OCS's legal custody. He was formally released from OCS custody on August 23, 2016.

## B.    Proceedings

Blake, through his conservator, filed suit against OCS and Alexa on June 29, 2018. This date was nearly three years after he turned 18, and nearly two years after he left OCS custody. OCS moved to dismiss the complaint, arguing that Blake's claims were barred by the two-year statute of limitations. OCS argued that the complaint should have been filed no later than July 2, 2017, Blake's 20th birthday, and was thus nearly a year late. Blake argued his complaint was timely because he did not reach the age of majority until he was released from OCS custody in August 2016. He also argued that he was mentally incompetent during the relevant period, that OCS should be collaterally estopped from arguing otherwise, and that equitable tolling should apply.

The superior court concluded that the complaint was untimely filed and scheduled an evidentiary hearing to determine Blake's competency. Blake moved for summary judgment, which was denied. After seven days of hearings and an additional round of briefing on equitable tolling, the court granted OCS's motion to dismiss, finding Blake had not demonstrated he was incompetent and that equitable tolling did not apply. Instead, the court concluded Blake made a "deliberate decision not to sue" and the statute of limitations had elapsed. The court entered a written order dismissing the complaint and awarded attorney's fees to OCS.

Blake appeals.

## III. STANDARD OF REVIEW

"[W]e review de novo questions regarding the applicable statute of limitations, the interpretation of that statute, and whether that statute bars a claim."[3] We likewise review de novo whether the elements of collateral estoppel are satisfied,[4] whether judicial estoppel is available,[5] and whether equitable tolling is available.[6]

## IV. DISCUSSION

Blake's tort claims are barred by the statute of limitations, which requires such claims to be brought within two years.[7] Although the statute of limitations was tolled while Blake was a minor,[8] more than two years elapsed between the date he turned 18 and the date he filed his lawsuit. Blake raises a series of arguments for why the statute of limitations should not bar his claims, including that his commitment to OCS custody tolled the statute of limitations until age 19, that collateral estoppel barred OCS from asserting he was competent to file suit, and that principles of equitable tolling should excuse his failure to meet the deadline. For the reasons discussed below, we reject these arguments and affirm the decision of the superior court.

---

[3]     *Moffitt v. Moffitt*, 341 P.3d 1102, 1104 (Alaska 2014) (alteration in original) (quoting *Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1271 (Alaska 2013)).

[4]     *Lane v. Ballot*, 330 P.3d 338, 341 (Alaska 2014) (citing *Rapoport v. Tesoro Alaska Petroleum Co.*, 794 P.2d 949, 951 (Alaska 1990)).

[5]     *Zwiacher v. Capstone Fam. Med. Clinic, LLC*, 476 P.3d 1139, 1143 (Alaska 2020).

[6]     *See Griffin v. Hemphill*, 521 P.3d 584, 589 (Alaska 2022) (holding legal standard used to determine when cause of action accrued is question of law); *cf. Irby v. Fairbanks Gold Mining, Inc.*, 203 P.3d 1138, 1142-43 (Alaska 2009) (applying equitable tolling); *see also Jones v. Blanas*, 393 F.3d 918, 926 (9th Cir. 2004) ("A district court's decision whether to apply equitable tolling is generally reviewed for abuse of discretion, but where the relevant facts are undisputed, review is de novo.").

[7]     AS 09.10.070(a).

[8]     *See* AS 09.10.140(a).

**A.** **An Extended Stay In Foster Care Does Not Toll The Statute Of Limitations.**

**1.** **The extended foster care statute does not create an exception to the generally applicable statute of limitations.**

Blake first argues that the statute of limitations was tolled while he was in OCS custody between the ages of 18 and 19, a period we refer to as extended foster care. As a general rule, tort claims must be "commenced within two years of the accrual of the cause of action."[9] This limit ensures that plaintiffs pursue their claims promptly and avoids the injustices that may result from the delayed prosecution of stale claims.[10] When a cause of action accrues while a person is under the age of majority, the statute of limitations is tolled until that person reaches the age of majority.[11] The age of majority is defined by statute as 18,[12] but the statute recognizes that other statutes may create a different age of majority applicable to specific situations or activities.[13] Blake argues that the extended foster care statute, AS 47.10.080, is one such statute.

We cannot agree. By its own terms, AS 47.10.080 says nothing about the age of majority. The statute only provides that a court may order a child "committed to the department" for a period of time "not to extend past the date the child becomes 19 years of age."[14] Blake suggests that the use of the term "child" in the statute is sufficient

---

[9]     AS 09.10.070(a).

[10]    *See Irby v. Fairbanks Gold Mining, Inc.*, 203 P.3d 1138, 1143 (Alaska 2009).

[11]    AS 09.10.140(a); *see, e.g.*, *Hanson v. Kake Tribal Corp.*, 939 P.2d 1320, 1325-26 (Alaska 1997) (tolling statute of limitations for minors).

[12]    AS 25.20.010. We have previously held that this statute defines the age of majority for purposes of the statute of limitations. *See Fields v. Fairbanks N. Star Borough*, 818 P.2d 658, 659 (Alaska 1991).

[13]    AS 25.20.010 (providing age of majority is 18 "except as otherwise provided by statute"); *see Allam v. State*, 830 P.2d 435, 437-38 (Alaska App. 1992).

[14]    AS 47.10.080(c)(1).

to show that anyone subject to OCS custody between age 18 and age 19 has not reached the age of majority for purposes of tolling the statute of limitations. But the age-of-majority statute applies "except as otherwise provided by statute."[15] Statutes creating an exception do so explicitly, either by referring to the age of majority or by setting a specific age at which certain rights and duties attach.[16] The use of the term "child" in AS 47.10.080, without more, is not sufficient to create a statutory exception to the age of majority established in AS 25.20.010.

### 2. OCS's obligations under AS 47.10.084 do not create an exception to the statute of limitations.

Blake next relies on AS 47.10.084, which defines OCS's obligations to children in its custody, to argue that the statute of limitations must be tolled during the period a child is in OCS custody. Blake notes that an 18-year-old in extended foster care remains in a "relationship of legal custody" with OCS,[17] which imposes certain obligations on OCS. Blake argues that these obligations are inconsistent with the rights of adulthood, concluding that an 18-year-old who remains in the legal custody of OCS has not reached the age of majority.

The text and structure of AS 47.10.084 demonstrate that OCS's responsibilities to obtain legal representation and make significant legal decisions for a child in its custody terminate once the child reaches the ordinary age of majority,[18] even if that child remains in OCS custody past age 18. The statute contains three relevant subsections: .084(a), which defines the responsibilities of OCS for children in its custody; .084(b), which describes the possible powers of a court-appointed guardian;

---

[15]     AS 25.20.010.

[16]     *See, e.g.*, AS 04.16.050(a) (setting drinking age at 21); AS 11.61.220(a)(3) (criminalizing possession of firearms by minors under 16); AS 25.20.020 (providing person who is legally married reaches age of majority).

[17]     AS 47.10.084(a).

[18]     AS 25.20.010.

and .084(c), which defines the residual rights of parents. OCS assumes the rights and responsibilities of .084(b) and .084(c) only "[w]hen parental rights have been terminated, or there are no living parents."[19]

Blake points to the provisions of AS 47.10.084(a), which assign OCS "the responsibility of physical care and control of the child" and "the right and responsibility to make decisions of financial significance," and suggests that these provisions mean children in OCS custody "lack all indicia of majority."[20] The text of AS 47.10.084(a) lends some credibility to Blake's argument. But our precedents require us to read statutes harmoniously,[21] giving effect to every word and provision,[22] and presuming a given word bears the same meaning throughout.[23] And we cannot embrace Blake's reading of AS 47.10.084(a) in light of the explicit language in AS 47.10.084(b) about "obtaining representation for the child in legal actions, and making decisions of legal or financial significance concerning the child." Reading the reference to "decisions of financial significance" in .084(a) to subsume all decisions of legal significance would render meaningless the separate reference to decisions of legal significance in .084(b). Instead, the explicit reference to these powers in .084(b) suggests that they are *not* conveyed by implication in .084(a).[24]

---

[19] AS 47.10.084(a).

[20] *Id.*

[21] *Rydwell v. Anchorage Sch. Dist.*, 864 P.2d 526, 528 (Alaska 1993).

[22] *See Kodiak Island Borough v. Roe*, 63 P.3d 1009, 1014 n.16 (Alaska 2003) (citing *Kodiak Island Borough v. Exxon Corp.*, 991 P.2d 757, 761 (Alaska 1999)).

[23] *Forrer v. State*, 471 P.3d 569, 585 (Alaska 2020).

[24] *See Alaska State Comm'n for Hum. Rts. v. Anderson*, 426 P.3d 956, 964 n.34 (Alaska 2018) ("[W]here certain things are designated in a statute, 'all omissions should be understood as exclusions.' " (quoting *Croft v. Pan Alaska Trucking, Inc.*, 820 P.2d 1064, 1066 (Alaska 1991))).

Blake next argues that the responsibilities outlined in AS 47.10.084(b) and (c) also apply to children who remain in the legal custody of OCS past the age of 18. These responsibilities include obligations for OCS to "obtain[] representation for the child in legal actions" and make "decisions of legal . . . significance," duties that appear inconsistent with the child's ability to competently decide whether to file suit.[25]

OCS is a creature of statute, and its rights and responsibilities therefore must be defined by statute.[26] Parental rights, by contrast, include all of the rights not explicitly committed to OCS.[27] The use of the term "residual" in .084(c) suggests that this category of parental rights includes all rights that are not interrupted by .084(a).[28] Accordingly, both .084(b) and .084(c) state that the list of powers therein is not exhaustive, a disclaimer that does not appear in .084(a).[29]

The right to make "decisions of legal . . . significance" and the responsibility to "obtain[] representation for the child in legal actions" appear only in .084(b), not .084(c). But the open-ended nature of parental rights, the language of both

---

[25] AS 47.10.084(b).

[26] *See McDaniel v. Cory*, 631 P.2d 82, 88 (Alaska 1981) ("Administrative agencies . . . are creatures of statute and therefore must find within the statute the authority for the exercise of any power they claim.").

[27] *See Diana H. v. Rubin*, 171 P.3d 200, 204 (Ariz. App. 2007) (noting that term "residual" indicates that "the legislature intended that parents would retain those rights not expressly acquired by [the state child welfare agency]").

[28] *See Residue*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("Something that is left over after a part is removed or disposed of; a remainder."); *Residual, id.* ("A leftover quantity; a remainder."); *see also In re J.P.*, 648 P.2d 1364, 1366 n.1 (Utah 1982) (defining "residual parental rights" in Utah law as including inheritance rights, right to determine child's religious affiliation, and right to sue for wrongful death of minor child).

[29] AS 47.10.084(b) (explaining that rights and responsibilities of guardian "may include, but are not limited to," listed rights and responsibilities); AS 47.10.084(c) (stating that residual parental rights "may include, but are not limited to," listed rights and responsibilities).

clauses confirming they are not exhaustive lists, and the provision of .084(a) stating OCS only assumes these obligations "[w]hen parental rights have been terminated" all suggest .084(b) and .084(c) provide overlapping lists of residual parental rights, all of which pass to the child once he reaches the age of majority.[30] This reading is confirmed by a generally applicable statute providing that the right to bring a legal action, like other residual parental rights, ordinarily passes from parent to child once the child reaches the age of majority.[31] As the general age of majority statute applies to children in extended foster care,[32] these powers thus pass to children who remain in OCS custody past the age of 18.

Our interpretation of the relevant statutes also aligns with the purpose of extended foster care: offering a structured and supportive transition to adulthood.[33] Residual parental rights, including the authority to make decisions about major medical treatment, military enlistment, and lawsuits,[34] pass to the child at the age of majority, as do certain powers like the capacity to enter into contracts. OCS remains responsible under AS 47.10.084(a) for providing food, shelter, education, and medical care while the child in extended foster care learns to navigate these adult responsibilities.

Although our reading of the statute bars Blake's tort claim in this case, it ultimately affirms the legislature's goal, expressed in the extended foster care statutes, of enabling young adults in extended foster care to make crucial decisions about their lives. Allowing these young adults to progressively assume adult responsibilities, while

---

[30]     *Cf.* 4 Alaska Administrative Code 52.590 (providing all children committed to OCS custody are entitled to appointment of surrogate parent in educational matters at ages 3-17, but only at ages 18-21 if "adjudicated incompetent").

[31]     *See* AS 09.15.010.

[32]     *See supra* Part IV.A.1.

[33]     *See* Foster Care Independence Act of 1999, Pub. L. No. 106-169, § 101, 113 Stat. 1822, 1823.

[34]     *See* AS 47.10.084(b)-(c).

maintaining OCS's responsibilities to ensure certain needs are met, allows children in extended foster care additional time to develop the skills and relationships necessary for adulthood. This system also ensures that children do not abruptly and automatically lose OCS services at age 18.

### 3. The Alaska Constitution does not require that claims be tolled during extended foster care.

Finally, Blake contends that allowing the statute of limitations to run during extended foster care would unconstitutionally impair access to the courts. We have previously stated "that the due process clause of the Alaska Constitution contains within it a 'right of access' to the courts."[35] But this right is "ordinarily implicated only when a legislative enactment or governmental action erects a direct and 'insurmountable barrier' in front of the courthouse doors."[36]

No such insurmountable barrier existed here. Blake was aware of the potential claims and deadlines and retained counsel in anticipation of filing suit. Further, his sister was able to file suit against OCS despite being in extended foster care. While we have previously observed that "having parents or guardians who are unwilling or unable to timely file suit is not something a minor can overcome," we reached that conclusion because 10-year-old children cannot be expected to retain counsel or file suit on their own.[37] Here, Blake retained counsel after turning 18, but failed to file suit because he was preoccupied with school, work, and family issues, and because Blake was uncertain how the statute of limitations applied to children in OCS custody. While these types of barriers to filing may practically deter many litigants from filing, they

---

[35] *Sands ex rel. Sands v. Green*, 156 P.3d 1130, 1134 (Alaska 2007) (quoting *Bush v. Reid*, 516 P.2d 1215, 1217-20 (Alaska 1973)).

[36] *Id.* (quoting *Varilek v. City of Houston*, 104 P.3d 849, 853-55 (Alaska 2004)).

[37] *Id.* at 1134-35.

are not the sort of direct, insurmountable barriers created by the government that would constitute an unconstitutional impairment of access to the courts.

**B.     OCS Is Not Estopped From Arguing Blake Is Competent.**

At trial, Blake unsuccessfully argued that the statute of limitations should have been tolled because he was incompetent. Blake does not challenge the superior court's factual finding that he was competent during the relevant period. On appeal, he argues OCS should be estopped from arguing he was competent because it previously took the opposite position when it petitioned to appoint a guardian for him. Alternatively, if the test for collateral estoppel is not met, Blake suggests OCS should nonetheless be judicially estopped from asserting inconsistent positions on his competency. We conclude that collateral estoppel is not available here because the competency standard in a conservatorship and partial guardianship proceeding is different from the standard of competence necessary to file suit. Judicial estoppel is likewise unavailable because OCS's positions were not inconsistent.

**1.     The test for collateral estoppel is not met.**

Collateral estoppel "bars the relitigation of issues actually determined" in a prior proceeding.[38] Four factors must be met for collateral estoppel to apply: (1) the party against whom the preclusion is employed must have been a party to or in privity with a party to the first action; (2) the issue must be identical to the issue decided in the first action; (3) the issue must have been resolved in the first action by a final judgment on the merits; and (4) the determination of the issue must have been essential to the final judgment.[39]

The second factor is not satisfied here because the issues in the two actions are not identical. Specifically, there is a difference between the standards for capacity

---

[38]     *Allstate Ins. Co. v. Kenick*, 435 P.3d 938, 944 (Alaska 2019) (quoting *Latham v. Palin*, 251 P.3d 341, 344 (Alaska 2011)).

[39]     *Id.*

to sue and for appointment of a conservator/partial guardian. Alaska Statute 13.26.201 provides that "[a]n incapacitated person for whom a guardian has been appointed is not presumed to be incompetent and retains all legal and civil rights except those that have been expressly limited by court order or have been specifically granted to the guardian by the court." Alaska Statute 13.26.316(c) lists the powers and duties of a full guardian, including responsibility for "the initiation of court action." Here, however, OCS sought only a conservatorship and partial guardianship over housing. The trial court's order noted Blake's "incapacity" to manage his finances or housing, but as AS 13.26.201 makes clear, incapacity is not incompetency. Nothing in the order indicates that the court made any findings about Blake's competency to file suit, and OCS is therefore not estopped from arguing he was competent to sue.

In any event, the third and fourth factors are also not satisfied because there was no final judgment on the merits on this issue in the prior proceeding.[40] Instead, the parties agreed to appoint a conservator and partial guardian. No express findings about Blake's competency to initiate legal proceedings were made at any point.

### 2. The test for judicial estoppel is not met.

Judicial estoppel offers an avenue to estoppel where the elements of collateral estoppel are not all present, but estoppel is nonetheless justified to prevent a party from taking "clearly inconsistent" positions.[41] But OCS's positions here are not clearly inconsistent because, as discussed above, the standards for capacity to sue and

---

[40]    *See In re Adoption of A.F.M.*, 15 P.3d 258, 268-69 (Alaska 2001) (explaining collateral estoppel requires issue be raised, submitted to court for determination, and determined). An issue is not "actually litigated if it is the subject of a stipulation between the parties," unless the parties clearly intended the stipulation to be binding in a future proceeding. RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. e (AM. L. INST. 1982); *see Nelson v. Jones*, 787 P.2d 1031, 1036 & n.4 (Alaska 1990). That rare exception is not applicable here.

[41]    *See Zwiacher v. Capstone Fam. Med. Clinic, LLC*, 476 P.3d 1139, 1143 (Alaska 2020) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)).

for appointment of a conservator are different. OCS's stipulation to the need for a conservator and partial guardian over housing did not commit it to a position on Blake's competency to initiate legal proceedings.

### C. Equitable Tolling Does Not Apply.

Finally, Blake argues that the "extraordinary circumstances" of his case justify application of the doctrine of equitable tolling. This doctrine "looks only to the claimant's circumstances" to determine whether equity justifies tolling the statute of limitations.[42] We have thus far recognized equitable tolling only "when a plaintiff has multiple legal remedies available" and chooses to pursue one alternative remedy that proves unavailing.[43] The superior court applied this standard and concluded equitable tolling did not apply to Blake's circumstances.

A handful of other jurisdictions employ a broad conception of equitable tolling that applies "where extraordinary circumstances outside the plaintiff's control make it impossible for the plaintiff to timely assert his or her claim."[44] This broader conception of equitable tolling requires showing both that the litigant has diligently sought to vindicate his rights and that circumstances "made it *impossible* to file on time."[45] The first element asks whether the plaintiff was " 'without any fault' in

---

[42] *Kaiser v. Umialik Ins.*, 108 P.3d 876, 880 (Alaska 2005).

[43] *Solomon v. Interior Reg'l Hous. Auth.*, 140 P.3d 882, 884 (Alaska 2006) (quoting *Gudenau & Co. v. Sweeney Ins.*, 736 P.2d 763, 768 (Alaska 1987)). Under these circumstances, the limitations period for the second remedy is tolled while the plaintiff pursues the first remedy. *See Park v. Spayd*, 509 P.3d 1014, 1021-22 (Alaska 2022).

[44] *Kaiser*, 108 P.3d at 882 (quoting *Abbott v. State*, 979 P.2d 994, 998 (Alaska 1999)); *see, e.g.*, *Booth v. United States*, 914 F.3d 1199, 1206-07 (9th Cir. 2019).

[45] *Doe v. Garland*, 17 F.4th 941, 946 (9th Cir. 2021) (emphasis in original).

pursuing his claim,"[46] because the doctrine "is not available to avoid the consequence of one's own negligence."[47]  The second element requires establishing circumstances that are "both extraordinary *and* beyond [the litigant's] control" that made it impossible to file on time.[48]  The threshold to trigger equitable tolling is "a very high bar," and this doctrine "is reserved for rare cases."[49]  Any litigant thus "bears a heavy burden to show that [he] is entitled to equitable tolling, 'lest the exceptions swallow the rule.' "[50]

Alaska has "neither accepted nor rejected this theory of tolling."[51]  The superior court briefly considered it in this case, but concluded that "the facts of this case don't meet" the standard used by other jurisdictions.  Blake argues that we should use this case to adopt this theory of tolling.  But even if we were to adopt this theory, it would not apply in this case because neither prong has been satisfied.

The first prong requires showing that the litigant "has been pursuing his rights diligently."[52]  While Blake argues he was "navigating a legal system fraught with unanswered questions" about how the statute of limitations might apply to his circumstances, and that "it is inequitable to hold this legal uncertainty against [him]," the record shows that, after he turned 18, he had multiple conversations about filing a lawsuit and even retained an attorney, but nevertheless waited over two years to file his

---

**46**      *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) (quoting *FEC v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996)).

**47**      *Hensley v. United States*, 531 F.3d 1052, 1058 (9th Cir. 2008) (quoting *Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir. 1998)).

**48**      *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 257 (2016) (emphasis in original).

**49**      *Yeh v. Martel*, 751 F.3d 1075, 1077 (9th Cir. 2014).

**50**      *Rudin v. Myles*, 781 F.3d 1043, 1055 (9th Cir. 2015) (quoting *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010)).

**51**      *Kaiser v. Umialik Ins.*, 108 P.3d 876, 882 (Alaska 2005).

**52**      *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

complaint. Blake explained that he was preoccupied with school, work, and family issues, but this explanation does not excuse his obligation to diligently pursue his rights.

The second prong requires showing an "extraordinary circumstance" that is both "the but-for and proximate cause of [the plaintiff's] untimeliness."[53] While both the horrific abuse he suffered and his placement in extended foster care from 18 to 19 were beyond Blake's control,[54] these circumstances did not make it impossible for him to timely file. Blake does not challenge the superior court's factual finding that he was competent to file suit. And the record shows that Blake's sister was able to timely file suit while she was in OCS custody, that Blake was aware of this lawsuit and encouraged to join it, and that he retained an attorney to file a similar action. Blake has not shown that OCS blocked any of his attempts to file suit or otherwise interfered with his ability to file suit by the statutory deadline. Blake argues that "legal uncertainty" prevented him from filing, but a plaintiff's (or his counsel's) uncertainty about the law does not, without more, make it "*impossible* to file on time."[55] The extraordinary circumstances requirement is simply not met.

## V. CONCLUSION

The judgment of the superior court is AFFIRMED.

---

[53] *Allen v. Lewis*, 255 F.3d 798, 800 (9th Cir. 2001), *rev'd en banc on other grounds*, 295 F.3d 1046 (9th Cir. 2002); *see, e.g.*, *Hanger v. Abbott*, 73 U.S. (6 Wall.) 532, 539-40 (1867) (equitably tolling statutes of limitations during period of court closure); *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009) (stating equitable tolling may apply in habeas action where prisoner was denied access to his legal file).

[54] *See* AS 47.10.080(c)(1)(A) (allowing court to place child in extended foster care on petition by OCS and after hearing).

[55] *Doe v. Garland*, 17 F.4th 941, 946 (9th Cir. 2021) (emphasis in original); *cf. Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 257-58 (2016) (explaining mistaken inference about what law requires is insufficient to justify equitable tolling).