**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN DOE, an individual, | No. 20-56063 |
| *Plaintiff-Appellant*, | D.C. No. 2:20-cv-03434-CJC-AGR |
| v. | |
| MERRICK B. GARLAND, Attorney General; CHRISTOPHER A. WRAY, official and personal capacity as Director of the Federal Bureau of Investigation; UNITED STATES DEPARTMENT OF JUSTICE; FEDERAL BUREAU OF INVESTIGATION, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted September 3, 2021
Pasadena, California

Filed November 9, 2021

Before:  Mark J. Bennett and Ryan D. Nelson, Circuit
Judges, and David A. Ezra,[*] District Judge.

Opinion by Judge Ezra

---

**SUMMARY[**]**

---

**Civil Rights**

The panel affirmed the district court's dismissal for failure to state a claim of an action alleging that the continued online public availability of the government's press releases relating to Appellant's guilty plea and subsequent sentencing violated his statutory and constitutional rights.

Between 2007 and 2011, the Department of Justice and the Federal Bureau of Investigation issued press releases disclosing Appellant's role in the mortgage fraud crimes with which he and his coconspirators were charged.  The press releases included Appellant's name, age, and the charges against him, as well as some limited employment history.  What Appellant takes issue with is not that these notices were published in the first place, but that they remain publicly available on both the DOJ and FBI websites to this day.

---

[*] The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that Appellant's Privacy Act claim was barred by the Act's two-year statute of limitations, which begins to run when a cause of action arises. Citing *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1130 (9th Cir. 2006), the panel held that, while information may be repeatedly accessed long after publication, the "single publication rule" provides that the statute of limitations runs only from the date of original dissemination. The panel rejected Appellant's assertion that equitable tolling should be applied to save the claim.

The panel held that Appellant failed to state a constitutional right to privacy claim because the information contained in the press releases did not implicate his privacy rights under the Constitution; while individuals may have a constitutional privacy interest in certain, highly sensitive information, Appellant simply did not have such an interest in the information at issue in this case.

Rejecting the Eighth Amendment cruel and unusual punishment claim, the panel held that the district court applied the correct test in determining whether the press releases were punitive in purpose or effect and did not err by denying Appellant the opportunity to amend his complaint. As to Appellant's claim brought under the Administrative Procedure Act, the panel held that the claim was based on the constitutional right to privacy claim, and any argument to the contrary was forfeited. Finally, the district court did not err by denying Appellant leave to amend his complaint to reflect further fact development because the proposed amendment would have been futile.

## COUNSEL

Richard G. Novak (argued), Law Offices of Richard G. Novak, Pasadena, California; Donald Jay Ritt (argued) and Tiffany W. Tai, Ritt Tai Thvedt & Hodges LLP, Pasadena, California; for Plaintiff-Appellant.

Daniel A. Beck (argued), Assistant United States Attorney; David M. Harris, Chief, Civil Division; Tracy L. Wilkison, Acting United States Attorney; United States Attorney's Office, Los Angeles, California; for Defendants-Appellees.

## OPINION

EZRA, District Judge:

Press releases describing federal convictions remain archived but publicly available on government websites long after initial publication. In this case, Appellant John Doe alleges that government press releases relating to his guilty plea and subsequent sentencing violate his statutory and constitutional rights. The district court found, however, that Appellant failed to state a claim for relief on any of the grounds he asserted. We affirm.

## BACKGROUND

In 2007, Appellant John Doe[1] ("Appellant") was charged with and pled guilty to several mortgage fraud related crimes. Appellant's prison sentence and supervised release concluded in 2014 and 2017, respectively, and the district

---

[1] Appellant is utilizing the pseudonym John Doe in the instant litigation.

court determined on December 2, 2019, that Appellant satisfied his restitution obligations on or about October 24, 2012.

Between 2007 and 2011, the Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI") issued press releases disclosing Appellant's role in the mortgage fraud crimes with which he and his coconspirators were charged ("Press Releases" or the "Releases"). The Releases include Appellant's name, age, and the charges against him, as well as some limited employment history. What Appellant takes issue with is not that these notices were published in the first place, but that they remain publicly available on both the DOJ and FBI websites to this day. In 2017, Appellant filed a motion in his criminal case to compel the DOJ to remove public access to the Releases ("Motion to Compel"). However, the Motion to Compel was ultimately unsuccessful on jurisdictional grounds.

On April 13, 2020, Appellant filed the instant civil action against Appellees the DOJ, the FBI, William P. Barr in his official capacity as Attorney General of the United States and in his personal capacity, and Christopher A. Wray in his official capacity as Director of the FBI and in his personal capacity (collectively "Appellees"). Appellant alleges the Press Releases' availability violates the Privacy Act, separation of powers, his constitutional right to privacy, and the Administrative Procedure Act ("APA"). Appellant also alleges the "digital punishment" he has suffered as a result of the Releases' continued availability amounts to cruel and unusual punishment under the Eighth Amendment.

The district court ultimately found Appellant failed to state a claim on any of his grounds for relief and dismissed the case pursuant to Federal Rule of Civil Procedure 12(b)(6). On appeal, Appellant contends the district court

erred by dismissing each of his claims and by denying him the opportunity to amend his complaint. This Court now affirms.

## STANDARD OF REVIEW

We review a district court's dismissal for failure to state a claim under Rule 12(b)(6) de novo. *Puri v. Khalsa*, 844 F.3d 1152, 1157 (9th Cir. 2017). In reviewing a district court's denial of leave to amend a complaint, we apply an abuse of discretion standard. *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009).

## DISCUSSION

We affirm the district court's dismissal of Appellant's Privacy Act, constitutional right to privacy, separation of powers, cruel and unusual punishment, and APA claims. The Privacy Act claim is barred by the statute of limitations, which was not equitably tolled. The press releases do not implicate any constitutional right to privacy and are neither punishment nor cruel and unusual. The APA claim is based on the constitutional right to privacy claim, and any argument to the contrary was forfeited. And finally, Appellant's proposed amendment would have been futile.

## I. Privacy Act

The Privacy Act imposes a two year statute of limitations, which begins to run when a cause of action arises. 5 U.S.C. § 552a(g)(5). Even where information violating the Act remains continuously available to the public after initial publication, it can give rise to only one cause of action. *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1130 (9th Cir. 2006). Thus, while information may be repeatedly accessed long after publication, the "single

publication rule" provides that the statute of limitations runs only from the date of *original* dissemination. *Id.*

Online information, like that at issue in this case, does pose some Privacy Act challenges not shared by its printed counterparts. However, this Court held in *Oja* that the single publication rule nevertheless applies. *Id.* at 1133 (acknowledging the unique characteristics of online media but holding parallels to printed information necessitate finding the single publication rule applicable to both). Appellant's emphasis on the continued availability of the Press Releases is therefore misplaced; original dissemination—not present availability—is the relevant inquiry under *Oja*.

The most recent original dissemination in this case occurred in 2011—more than eight years before Appellant filed his Privacy Act claim. And it is clear from the record that Appellant had actual knowledge of the Press Releases for years. In fact, Appellant "expended significant effort" in 2017 to ascertain when the Releases would cease being available to the public and even filed a Motion to Compel the DOJ to eliminate public access to them. Yet, despite Appellant's apparent awareness of and dissatisfaction with the Releases' continued availability, he waited until April 2020 to file his Privacy Act claim.

Appellant argues, however, that no violation occurred until the Press Releases became irrelevant or untimely within the meaning of the Privacy Act. *See* 5 U.S.C. § 552a(g)(1)(C). In other words, Appellant admits the Releases did not violate the Privacy Act when originally posted, but contends they became irrelevant and untimely when the district court found Appellant had made all his restitution payments in December 2019. Were Appellant

correct, his Privacy Act claim, filed just a few months later in April 2020, would be timely.

Because his claim arose before 2019, we need not decide in this case whether Appellant is correct that a special statute of limitations rule applies to Privacy Act claims based on the irrelevance or untimeliness of information.[2]   Appellant argues here that he was not "injured" by the Press Releases until December 2019, but his argument is contradicted by his own efforts to have them removed in 2017.  In fact, in his 2017 Motion to Compel, Appellant alleged the very thing he does in this case—that the DOJ's failure to remove the Releases amounted to a Privacy Act violation.  Thus, while Appellant now argues there was no Privacy Act violation until December 2019, he argued the DOJ had already violated his rights under the Act in a motion filed *two years earlier*.  Appellant's own actions show that his claim arose before 2019.

We reject Appellant's argument that the press releases became irrelevant and untimely as soon as the district court declared he had satisfied his restitution obligations.  Such a holding would be especially arbitrary considering, according to the order, Appellant actually made his final restitution payment in 2012, not 2019.

Alternatively, Appellant argues equitable tolling should be applied to save his untimely Privacy Act claim.  However, equitable tolling applies only if a litigant (1) has been

---

[2] While we refrain from deciding the issue here, it is worth noting that the rule Appellant proposes would result in "endless retriggering of the statute of limitations, multiplicity of suits and harassment of defendants"—the exact result this Court sought to avoid when it extended application of the single publication rule to online information in *Oja*.  440 F.3d at 1131–32 (quotations omitted).

diligently pursuing his rights, and (2) failed to timely file because some "extraordinary circumstance" stood in his way. *Menominee Indian Tribe of Wisc. v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). To satisfy the second element, the litigant must show that the extraordinary circumstance claimed made it *impossible* to file on time. *Booth v. United States*, 914 F.3d 1199, 1207 (9th Cir. 2019). Even assuming Appellant's 2017 attempts to have the Press Releases removed amounted to "diligently pursuing his rights" as required by the first element, nothing stood in the way of Appellant simultaneously filing his Privacy Act claim. In fact, when asked during oral argument whether Appellant could have filed his Privacy Act claim in 2017 (at or near the same time as his Motion to Compel) Counsel for Appellant admitted it would have been possible for him to do so.

Because Appellant's Privacy Act claims were filed after the statute of limitations had run and equitable tolling is inapplicable, we affirm the district court's dismissal of Appellant's Privacy Act claim.

## II. Constitutional Right to Privacy

The "precise bounds" of the constitutional right to privacy are uncertain. *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999). The Constitution protects certain conduct related to "marriage, procreation, contraception, family relationships, and child rearing and education." *Paul v. Davis*, 424 U.S. 693, 713 (1976). However, in *Whalen v. Roe*, 429 U.S. 589 (1977), the Supreme Court also identified the somewhat elusive interest in "avoiding disclosure of personal matters" as a privacy interest protected by the

Constitution.[3]  *Id.* at 599.  Here, Appellant argues Appellees have violated his right to the latter, and that the district court erred by holding there is no informational right to privacy. This is not, however, what the district court held.  Rather, the district court held Appellant did not have a privacy interest in the *type* of information disclosed in the Press Releases. We affirm.

As explained in the district court's dismissal order, the Supreme Court held in *Davis* that government disclosure of an "official act such as an arrest" does not implicate the constitutional right to privacy.  424 U.S. at 713.  Since *Davis*, circuit courts have found other similar disclosures constitutional as well.  *See*, *e.g.*, *Eagle v. Morgan*, 88 F.3d 620, 626–27 (8th Cir. 1996) (finding no legitimate expectation of privacy in the details of a prior guilty plea, as such matters are, by their very nature, within the public domain); *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995) ("[G]overnment disclosures of arrest records, judicial proceedings, and information contained in police reports do not implicate the right to privacy." (citations omitted)); *see also Nunez v. Pachman*, 578 F.3d 228, 231 (3d Cir. 2009) (holding expunged criminal record disclosure constitutional).

While analogous to the examples of other non-private information above, the information disclosed in this case is easily distinguished from what this Court has found may

_____

[3] While the Supreme Court acknowledged the existence of an "informational" privacy right in *Whalen*, 429 U.S. at 599, and *Nixon v. Administrator of General Services*, 433 U.S. 425, 457 (1977), the Court merely assumed without deciding that such a right is protected by the Constitution in *National Aeronautics and Space Administration v. Nelson*, 562 U.S. 134, 138 (2011).

implicate a constitutional right to privacy. For example, in *Tucson Woman's Clinic v. Eden*, 379 F.3d 531 (9th Cir. 2004), this Court held a statutory provision requiring abortion providers to disclose unredacted medical records—including *full medical histories*—and ultrasound prints with patient identifying information violated patients' informational right to privacy. *Id.* at 552–53. The Court has also acknowledged the "indiscriminate public disclosure" of social security numbers "*may* implicate the constitutional right to informational privacy." *Crawford*, 194 F.3d at 958, 960 (emphasis added) (finding no constitutional violation despite SSN disclosure).

While individuals may have a constitutional privacy interest in certain, highly sensitive information,[4] Appellant simply does not have such an interest in the information at issue in this case. Tellingly, Appellant never challenged the constitutionality of the Press Releases *at the time they were published*. And he cites no authority supporting his claim that a press release, after being available for years, can somehow transform into an unconstitutional disclosure simply because it is now "stale."

The only authority Appellant does cite in support of this position relates to Freedom of Information Act ("FOIA") privacy exemptions, *not* a constitutional right to privacy. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989) (considering extent to which FOIA Exemption 7(C) prevents disclosure of expansive law enforcement records about a private citizen); *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1 (D.C. Cir. 2011) (considering extent to which FOIA Exemption 7(C)

---

[4] In *Tucson Woman's Clinic*, we characterized patient identifying ultrasound prints as "very sensitive" information. 379 F.3d at 553.

prevents disclosure of docket numbers, case names, and presiding courts). Such authority is not helpful to Appellant—"[t]he question of the statutory meaning of privacy under the FOIA is, of course, not the same as the question whether . . . an individual's interest in privacy is protected by the Constitution." *Reporters Comm.*, 489 U.S. at 762 n.13.

Appellant has failed to state a constitutional privacy right claim because the information contained in the Press Releases does not implicate his privacy rights under the Constitution. Accordingly, the district court's dismissal is affirmed.

## III.     Cruel and Unusual Punishment and Separation of Powers

For Appellant to succeed on his cruel and unusual punishment claim, the Press Releases, by remaining available, must amount to criminal punishment. *See Wilson v. Seiter*, 501 U.S. 294, 300 (1991) ("[T]he Eighth Amendment . . . bans only cruel and unusual *punishment*."). Similarly, Appellant's separation of powers claim relies on his contention that the executive branch is punishing him by maintaining the Releases.

The district court found Appellees did not post the Press Releases with the intent to punish, and Appellant does not challenge that finding. Rather, Appellant takes issue with the district court's holding that the Releases are not punitive in effect. Specifically, Appellant argues the district court (1) applied the wrong test in deciding the punitive effect question, and (2) should have permitted further fact development or allowed him to amend his complaint before concluding the Press Releases were nonpunitive. We find the district court did not err on either of the grounds

Appellant asserts because his claims are foreclosed by the Supreme Court's holding in *Smith v. Doe*, 538 U.S. 84 (2003). Although *Smith* considered only the Ex Post Facto Clause, courts employ its test for punishment in the Eighth Amendment context. *See, e.g.*, *Millard v. Camper*, 971 F.3d 1174, 1181–84 (10th Cir. 2020); *Does 1–7 v. Abbott*, 945 F.3d 307, 313–15 & n.9 (5th Cir. 2019); *United States v. Under Seal*, 709 F.3d 257, 263–66 (4th Cir. 2013).

In *Smith*, the Supreme Court held that the maintenance of an online sex offender registration and notification system was nonpunitive. *Id.* at 105. According to the *Smith* Court, the initial inquiry is whether the government's objective in implementing the allegedly punitive mechanism was to punish. *Id.* at 92. If *intended* to punish, the mechanism is punitive. *Id.* at 92. But if the government intended to advance a nonpunitive objective, the question becomes whether the government action was so punitive in effect that it amounts to punishment despite a lack of punitive intent. *Id.* at 92. The *Smith* Court cautioned, however, that because intent to impose a nonpunitive mechanism is ordinarily afforded deference, "only the clearest proof" will transform what was intended to be nonpunitive into a criminal penalty. *Id.* at 92 (citation omitted). The Court then identified a number of "useful guideposts" for analyzing the potentially punitive effects of government action. *Id.* at 97 (citation omitted).

The factors especially relevant here are whether the mechanism at issue (1) is "regarded in our history and traditions as a punishment;" (2) "imposes an affirmative disability or restraint;" (3) "promotes the traditional aims of punishment;" (4) has a rational connection to a nonpunitive

purpose;" or (5) "is excessive with respect to this purpose."**5**
*Id.*

The *Smith* outcome itself shows that Appellees' Press Releases are not punitive government action in the traditional sense. In *Smith*, the Court found a sex offender registry nonpunitive even though it—like the press releases in this case—made offense details publicly available long after criminal punishment concluded. *Id.* at 91. The press releases Appellant complains of are analogous to the registry considered in *Smith*, and the ways they are distinguishable mostly hurt rather than help him. For example, the registry at issue in *Smith* disclosed not only an offender's conviction details, but also his "address, photograph, physical description, . . . place of employment, date of birth," and detailed vehicle information. *Id.* at 91 (citation omitted). The Court nevertheless found the registry was nonpunitive. *Id.* at 105. Additionally, failing to provide updated information for the registry in *Smith* led to the possibility of criminal prosecution, something Appellant does not face here. *Id.* at 101–02.

Also similar to the registry in *Smith*, the Press Releases do not impose an affirmative disability or restraint because Appellant is permitted to move freely and to "live and work as other citizens, with no supervision." *Id.* at 101 (finding no affirmative disability or restraint even where sex

---

**5** While there are two additional factors, they both relate to what circumstances or behaviors trigger application of the challenged government action. Because Appellant merely challenges the passive maintenance of archived press releases in this case, the remaining two factors are of little weight. *Smith*, 538 U.S. at 105.

offenders were required to notify authorities after growing a beard, borrowing a car, or seeking psychiatric treatment).

Third, the Press Releases do not advance the traditional aims of punishment. According to Appellees, release of information is intended to "administer justice and promote public safety[,]" as well as to serve "the right of the public to have access to information about the [DOJ]." It is true that deterrence is one purpose of punishment. But "[a]ny number of governmental programs might deter crime without imposing punishment." *Id.* at 102 ("To hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' . . . would severely undermine the Government's ability to engage in effective regulation." (quoting *Hudson*, 522 U.S. at 105)).

As to the fourth factor, the *Smith* Court found that public safety—one of the purposes advanced by the sex offender registry—was both legitimate and nonpunitive. *Id.* at 102–03. According to the Court, the registry advanced public safety by "alerting the public to the risk of sex offenders in their community." *Id.* at 103 (quotations omitted). Similarly, the press releases at issue in this case foster public safety[6] and system transparency—both purposes the Supreme Court deemed legitimate and nonpunitive in *Smith*. *Id.* at 99, 102–03. Thus, the fourth factor also weighs in favor of finding the Releases are nonpunitive in effect.

Finally, the Releases are not excessive with respect to their nonpunitive purpose—they highlight only "accurate information about a criminal record," most (if not all) of which is already public. *Id.* at 98–99 (noting that "our

---

[6] As the district court noted, the Press Releases may "alert the public to the risk of doing business with someone convicted of mortgage fraud."

criminal law tradition insists on public indictment, public trial, and public imposition of sentence").

Because the Press Releases' continued availability is not punishment at all, it cannot amount to cruel and unusual punishment under the Eighth Amendment. However, even if we found Appellant was being punished, that punishment would not be the type of government action forbidden by the Eighth Amendment. *See Wilson*, 501 U.S. at 298 ("[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." (citations and quotations omitted)). Appellees' continued publication of truthful information about Appellant's guilty plea simply does not rise to that level.

The district court applied the correct test for determining whether the Press Releases were punitive in purpose or effect. Further, we hold the district court did not err by denying Appellant the opportunity to amend his complaint. While Appellant argues the expert declaration of Professor Langeson establishes Appellant suffers from "affirmative disability or restraint" as a result of the Releases' continued availability, this argument is foreclosed by caselaw. Specifically, because Appellees' action "imposes no physical restraint, . . . [it] does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint." *Smith*, 538 U.S. at 100.

## IV.    Administrative Procedure Act

Appellant's APA claim is based on alleged violations of his constitutional right to privacy. Because the district court found Appellant had failed to state a constitutional right to privacy claim, it found the APA claim must also be dismissed. Similarly, because we affirm the district court's

holding that Appellant failed to state a constitutional right to privacy claim, we also affirm on this issue.

While Appellant now argues for the first time on appeal that his APA claim was not based solely on his constitutional privacy claim, he never advanced such an argument before the district court in either his complaint or response to Appellee's motion to dismiss. Thus, he has forfeited his argument that his APA claim is based on anything other than alleged constitutional right to privacy violations. *See Momox-Caselis v. Donohue*, 987 F.3d 835, 841 (9th Cir. 2021) ("Generally, we do not consider arguments raised for the first time on appeal."); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

## V.  Leave to Amend

"A district court acts within its discretion to deny leave to amend when amendment would be futile . . . ." *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725–26 (9th Cir. 2000). Appellant claims he should have been permitted to amend his complaint to reflect further fact development, including conclusions from Professor Langeson's declaration. However, as explained above, such amendment would not have saved his claim from dismissal. Therefore, because the proposed amendment would have been futile, the district court did not abuse its discretion by denying Appellant leave to amend.

**AFFIRMED.**