FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRIAN HOUSTON; and other persons similarly situated (the Class), | No. 23-15524 |
| *Plaintiff-Appellant*, | D.C. No. 2:22-cv-00875-SPL-MTM |
| v. | |
| MARICOPA, COUNTY OF, Arizona; PAUL PENZONE, Sheriff of Maricopa County, Arizona; Jane Doe Penzone; Unknown, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the District of Arizona
Steven Paul Logan, District Judge, Presiding

Argued and Submitted February 9, 2024
Phoenix, Arizona

Filed September 5, 2024

Before: Marsha S. Berzon, Andrew D. Hurwitz, and
Anthony D. Johnstone, Circuit Judges.

Opinion by Judge Berzon

# SUMMARY[*]

## Pretrial Detainees

The panel affirmed in part and reversed in part the district court's dismissal of a putative class action brought by Brian Houston alleging that Maricopa County's policy of posting photographs and identifying information of arrestees on its Mugshot Lookup website violated his rights to substantive and procedural due process and to a speedy public trial.

The photographs posted on the Mugshot Lookup website are often gathered by other internet sites and thus remain available after they are removed from the County website, even if the arrestee is never prosecuted or convicted.

The panel reversed the district court's dismissal of Houston's claim that the County violated his right to substantive due process, which protects pretrial detainees from punishment before adjudication of guilt. To constitute punishment, a government action must (i) harm a detainee and (ii) be intended to punish him.

Houston sufficiently alleged that, as a pretrial detainee, the Mugshot Lookup post caused him to suffer actionable harm—public humiliation and discomfort compounded by reputational harm. Although Houston's Mugshot Lookup post was not a condition of his pretrial detention, governmental actions that harmfully affect arrestees pretrial can violate due process if impermissibly punitive. Even if

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the County's assertion of transparency, without more, was a legitimate nonpunitive government interest, no rational relationship existed between that goal and the County's gratuitous inclusion of at least some of Houston's personal information on its Mugshot Lookup post. Absent a rational relation between the post and the County's interest, an inference that the post was motivated by punitive intent was plausible and so precluded dismissal.

The panel affirmed the district court's dismissal of Houston's procedural due process claim because he did not show that the County's Mugshot Lookup post implicated a cognizable liberty or property interest grounded in state law. Nor did Houston's complaint state a plausible Sixth Amendment claim for violation of his right to a speedy trial because Houston was not prosecuted and had no trial.

## COUNSEL

Daniel L. Kloberdanz (argued), Kozub Kloberdanz, Scottsdale, Arizona, for Plaintiff-Appellant.

Sarah L. Barnes (argued), Kelly M. Jancaitis, and Danielle N. Chronister, Broening Oberg Woods & Wilson PC, Phoenix, Arizona; Kirstin M. Dvorchak, Mesa Office of City Attorney, Mesa, Arizona; for Defendants-Appellees.

## OPINION

BERZON, Circuit Judge:

The Maricopa County (Arizona) Sheriff's Office posts photographs of arrestees on its website, accompanied by identifying information, for several days after an arrest. These identified photographs are often gathered by other internet sites and thus remain available after they are removed from the County website, even if the arrestee is never prosecuted, let alone convicted. The result is public exposure and humiliation of pretrial detainees, who are presumed innocent and may not be punished before an adjudication of guilt. Our question is whether Maricopa County's policy of posting photographs of arrestees is constitutionally permissible. We conclude that it is not.

## I. Background

Brian Houston was arrested by Phoenix police in January 2022 and charged with assault.[1] During Maricopa County's jail booking process, Houston's photo was taken and posted, alongside many others, on the County's publicly accessible "Mugshot Lookup" website. Next to the mugshot photo were Houston's full name, birthdate, and an entry under "Crime Type" describing the category of his alleged offense. Pushing a "More Details" button would have revealed Houston's sex, height, weight, hair color, eye color, and the specific charges on which he was arrested. The post remained online for approximately three days, pursuant to

---

[1] Because we are reviewing an order dismissing this case under Federal Rule of Civil Procedure 12(b)(6), we recite the facts as alleged in Houston's complaint, which we take as true. *See Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

the Sheriff's Office's regular practice.[2] Houston was never prosecuted on the charges noted on the post, which were later dropped.

To justify its mugshot posting practice, the County asserts that its posts promote transparency in the criminal legal system. But the "Mugshot Lookup" page did not contain the names of the arresting officers, the division of the County police department responsible for the arrest, whether charges were pursued or dismissed, or the jail in which Houston was held. The "Mugshot Lookup" posts thus shed light only on arrestees, not on the operations of the Sheriff's Office or County law enforcement.[3]

In May 2022, Houston filed a putative class action under 42 U.S.C. § 1983 and Arizona law against Maricopa County and Sheriff Paul Penzone (collectively, the County), seeking declaratory relief, injunctive relief, monetary damages, and punitive damages. Houston's complaint alleges that the County's conduct violated Arizona's Public Records Law; the Arizona Constitution's right to privacy; Arizona law on intentional and negligent infliction of emotional distress; the Arizona Mugshot Act; due process under the Fourteenth Amendment and the Arizona Constitution; the Fourteenth

---

[2] It appears that an individual's "Mugshot Lookup" record remains posted for a three-day period following arrest regardless of whether the individual is released from County custody within that period.

[3] According to Houston's complaint, the County's posts also contravene the Sheriff's Office's internal policies. Policy GF-3 provides that "personal identifying information," including birthdates, "shall be redacted" when criminal records are publicly disclosed. That policy emphasizes that birthdates have been "declared confidential by law" and thus constitute personal information that "must be redacted" before public release of criminal records.

Amendment's Equal Protection Clause; and the Sixth Amendment.

Houston alleged that the County's "Mugshot Lookup" post caused him "emotional distress and public humiliation," "permanently damaged" his "business and personal reputation," and "placed [him] at risk of identity theft, fraud and extortion." He asserts that at least one third-party website "scraped" his mugshot and personal information, and that the County was aware such practices occurred. Houston describes Maricopa County as a "scraping" hotspot, such that "the notorious Mugshots.com website[] purports to publish the booking photos and arrest information of close to *one million* Arizona residents—the vast majority (834,000) from Maricopa County alone."

The County moved to dismiss the operative complaint. The district court granted the motion, and denied Houston's motion for class certification as moot. Houston appeals, seeking review of the Rule 12(b)(6) dismissals of his substantive due process, procedural due process, and Sixth Amendment claims. We review the dismissal of those claims *de novo*. *See Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018).

## II. Substantive Due Process

Houston first advances a substantive due process claim. The Due Process Clause protects pretrial detainees from punishment before adjudication of guilt. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). To constitute punishment, a government action must (i) harm a detainee and (ii) be intended to punish him. *See Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004). The government need not expressly state its aim to punish; instead, we assess punitive purpose by considering whether the challenged conduct

operates as punishment or "whether it is but an incident of some other legitimate governmental purpose." *Bell*, 441 U.S. at 538.[4]

## A. Harm

Under this circuit's case law, Houston's allegations of harms by the County satisfies *Bell*'s first prong at the pleading stage.

In *Demery*, pretrial detainees challenged Maricopa County's installation and use of jail webcams on substantive due process grounds. 378 F.3d at 1024-25. Using in-jail cameras, the County publicly livestreamed footage of the jail's holding cells, bunkbeds, pre-intake areas, and intake areas. *Id*. at 1024. Detainees were filmed throughout their detention, including while being booked, photographed, fingerprinted, and subjected to pat-down searches. *Id*. In affirming a preliminary injunction, we held that *Bell*'s harm prong was satisfied because "[e]xposure to millions of complete strangers . . . as one is booked, fingerprinted, and generally processed as an arrestee . . . constitutes a level of humiliation that almost anyone would regard as profoundly undesirable." *Id*. at 1029-30. Such online exposure "significantly exceed[ed] . . . the inherent discomforts of confinement." *Id*. at 1030.

Here, Houston alleged, and we take as true in our review of the district court's dismissal, that the County's "actions have caused and will continue to cause [him] to suffer harm

---

[4] An additional consideration is whether the government action "appears excessive" in relation to its stated purpose. *Bell*, 441 U.S. at 538 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)). On appeal, Houston argues only that no legitimate nonpunitive government interest exists, so we do not address the excessive action consideration.

and public humiliation." As in *Demery*, the County's post on its "Mugshot Lookup" exposed Houston's image and the fact of his arrest to the "millions of strangers" able to access the Sheriff's public website online, triggering discomfort that "almost anyone would regard as profoundly undesirable." *Id.* at 1029-30. And unlike the livestreamed footage in *Demery*, the distributed image of Houston identified him personally by name and birthdate, making his "Mugshot Lookup" record immediately searchable. This exposure-based harm falls well within—and in one respect exceeds— the humiliation and discomfort recognized as actionable harm in *Demery*.[5]

The humiliation-based harm from the County's "Mugshot Lookup" post is compounded by the specific reputational harms Houston alleged. Houston stated that the County "permanently damaged" his business and personal reputation by posting his mugshot and personal information. *Demery* recognized that broadcasting personal images of

---

[5] Notably, courts have long recognized the harm in publicly circulating photographs of arrestees before trial. *See, e.g.*, *United States v. Kelly*, 55 F.2d 67, 70 (2d Cir. 1932) (noting instructions "not to make public photographs" of pretrial detainees to "prevent the misuse of the records"); *State ex rel. Mavity v. Tyndall*, 224 Ind. 364, 381-82 (1946) (recognizing that exhibiting a pretrial detainee's picture in a rogues' gallery could be "so serious a violation of [his] right of privacy as to justify judicial protection"); *Itzkovitch v. Whitaker*, 115 La. 479, 481 (1905) ("There can be no public good subserved by taking the photograph of an honest man for [public display]."); *McGovern v. Van Riper*, 137 N.J. Eq. 24, 45 (Ch. 1945) ("[A] person is defamed by the taking and widespread dissemination of his . . . photographs for criminal identification purposes before conviction."). These cases suggest a historical concern that without a particular justification for publishing an individual's mugshot, a general practice of doing so upon arrest "constitutes an unnecessary and unwarranted attack upon [a person's] character and reputation." *McGovern*, 137 N.J. Eq. at 46.

pretrial detainees online "increase[s] exponentially the number of people observing detainees, and also alter[s] drastically the classes of people who can watch the detainees." 378 F.3d at 1030. So too with the mugshots and personal information posted on the County's public "Mugshot Lookup" page. An "exponential[] . . . number" of viewers worldwide can access the site, including Houston's "friends, loved ones, co-workers and employers" and others who both influence and are influenced by his reputation. *Id.* at 1029-30. Houston's complaint thus makes sufficient allegations of harm to sustain his substantive due process claim.

## B. Government Punishment

The second *Bell* prong requires determining whether the County's "Mugshot Lookup" posts are intended to punish pretrial detainees. *See Bell*, 441 U.S. at 538. We must decide whether punitive intent may be inferred from the lack of rational relation to a legitimate nonpunitive government interest. *See id*. at 538-39.

### 1. Condition of Pretrial Detention

As a threshold matter, the parties dispute whether "Mugshot Lookup" posts are a condition of pretrial detention or release. If they are, the County may rely on interests that "assure the detainee['s] presence at trial [or] maintain the security and order of the detention facility." *Halvorsen v. Baird*, 146 F.3d 680, 689 (9th Cir. 1998). If posts are not conditions of pretrial detention or release, those two interests are not pertinent, but others may be. *See Bell*, 441 U.S. at 540.

We have previously observed that "the release of arrest records [is] not a condition of pretrial detention." *Demery*,

378 F.3d at 1032 n.6. In *Demery*, we recognized that the challenged action in *Paul v. Davis*, 424 U.S. 693 (1976)—distributing flyers with recent arrestees' names, mugshots, and crimes of arrest to local businesses—was not a condition of pretrial detention. *See Demery*, 378 F.3d at 1032 n.6. Similarly here, the County's "Mugshot Lookup" post, published shortly after Houston was taken into custody and which likewise included his name, mugshot, and crime of arrest, is best understood as a release of his arrest record that publicizes "the fact of [his] arrest." *Id.* (quoting *Paul*, 424 U.S. at 713).

The district court thus correctly determined that Houston's "Mugshot Lookup" post was not a condition of his pretrial detention. The district court was incorrect, however, in suggesting that if the governmental action challenged is "not a condition of pretrial detention," it "does not invoke the Fourteenth Amendment's protections." Rather, governmental actions that harmfully affect arrestees pretrial can violate due process if impermissibly punitive, whether a condition of pretrial detention or not.

### 2. Legitimate Government Interest

The County has provided only one nonpunitive reason for posting Houston's mugshot and personal information online: "transparency."[6] But that word is not a talisman that

---

[6] In the district court, the County argued that publishing "Mugshot Lookup" posts both "increase[s] transparency in the criminal justice system and meet[s] the Arizona public records laws requirement that all public records shall be made available for inspection." On appeal, the County does not press statutory compliance as a government interest. As "an appellee waives any argument it fails to raise in its answering brief," we consider only the County's asserted interest in transparency, not any

dispels the specter of government punishment. Arguments about transparency—quite a vague concept—require context. We cannot credit a transparency justification without evaluating what information is at issue, to whom such information is being revealed, and the purpose such disclosure serves. After conducting such an examination, we conclude that a mere assertion of a transparency interest does not establish a "legitimate governmental objective" requiring dismissal of Houston's complaint. *Bell*, 441 U.S. at 539.

The complaint plausibly asserts that the information the County posted about Houston is detailed and highly personal. The audience is global, as the information posted is accessible to anyone with an internet connection. The government's version of transparency suggests that public disclosure to any audience, however broad, of *any* information about what a government is doing is justified for its own sake. Not so. To defeat an inference of punitive intent, the County must articulate some *specific* concept of transparency that justifies public disclosure of *this* information to *this* audience. It has not convincingly done so at this stage of the case.

The cases the County cites as demonstrating the legitimacy of its transparency interest actually support the opposite conclusion. In those cases, transparency was invoked not in a vacuum but in the context of furthering public safety, an interest the County does not mention in its arguments about transparency.

---

statute-based interest. *United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015).

*Smith v. Doe*, for example, concerned a challenge to a sex-offender registration statute that made public information about convicted sex offenders. 538 U.S. 84, 89 (2003). In that context, *Smith* framed transparency as "essential to maintaining public respect for the criminal justice system, ensuring its integrity, and protecting the rights of the accused," emphasizing that the "[m]ost significant factor" supporting exposure of the information at issue in the case before the Court was "public safety, which is advanced by alerting the public to the risk of sex offenders in their communit[y]." *Id.* at 99, 102-03 (alterations in original) (first quoting *United States v. Ursery*, 518 U.S. 267, 290 (1996), and then quoting *Doe I v. Otte*, 259 F.3d 979, 991 (9th Cir. 2001)).

In *Doe v. Garland*, Doe challenged an FBI press release that included his name, employment history, charge, and guilty plea. 17 F.4th 941, 944 (9th Cir. 2021). Citing *Smith*, we recognized public safety and "system transparency" as legitimate nonpunitive aims. *Id.* at 949. Notably, *Smith* and *Doe* both arose in postconviction postures, where the notion that transparency is public-safety-promoting is bolstered by the fact of a previous conviction. Here, in contrast, Houston was arrested but not prosecuted; he had not been convicted when the County published its post and he never was.

*Paul v. Davis* invoked transparency as a pertinent government interest in the context of the government's public circulation of information about arrestees. *See* 424 U.S. 693, 695-96 (1976). But again, transparency in *Paul* was closely linked to public-safety concerns. In *Paul*, police distributed flyers to local businesses with Davis's name and photo after his arrest but before trial, identifying him as an "active shoplifter[]." *Id*. The Supreme Court emphasized that the flyers were intended to "alert[] local area merchants

to possible shoplifters" during the holiday season to "inform [their] security personnel." *Id*. As in *Smith* and *Doe*, the government's conduct was justified not by an indistinct concept of government transparency, but by the transmission of information to promote public safety. *Id.* The challenged distribution of Davis's personal information was limited to businesses with a specific interest in that information—to avoid being robbed or to report a robbery.

The County has not asserted that its untargeted broadcast of Houston's arrest record across the world promotes public safety in Maricopa County. Nor does the County offer examples where transparency alone—absent a connection to public safety—has been accepted as a legitimate nonpunitive interest for *Bell* purposes, much less in a pretrial context. *See Demery*, 378 F.3d at 1031-32. The County's lack of clarity and support in the present context for its stated goal of transparency undermines its contention that "Mugshot Lookup" posts do not punish pretrial detainees.

### 3. Rational Relation

Even if the mere assertion of transparency were, in this context, broad enough to reach beyond public-safety concerns, the County's policy is not rationally related to any such interest. Nowhere does the County explain *how* posting specific, highly personal information about individual arrestees online—including, here, Houston's image, birthdate, full name, appearance details, and charges— furthers any transparency interest.

In *Demery*, we held that livestreaming pretrial detainees online was not rationally related to transparency about Maricopa County's actions. *Demery*, 378 F.3d at 1031-32. *Demery* identified the County's stated interest in transparency as a government interest in empowering and

informing Maricopa County voters. *See id.* at 1032. But, we held, the "broad public exposure" of livestreaming the arrest process and pretrial detention was not "rationally connected to goals associated with educating the citizenry of Maricopa County." *Id.*

As in *Demery*, Houston's mugshot and personal information were posted on "the broad spectrum of the internet," with global public access, and he was subject to "broad public exposure." *Id.* at 1032 & n.6. To the extent the County's reliance on transparency has an unarticulated educational dimension, no reasonable connection exists between "displaying images of [Houston] to internet users from around the world," accompanied by personally identifying details, and educating Maricopa County residents about how the government generally, or the criminal legal system in particular, operates. *Id.* at 1032. One could perhaps derive from the "Mugshot Lookup" posts statistics about the crimes for which people are being arrested in Maricopa County, but personal information about the individuals being arrested is extraneous for that purpose. Nor do the posts contain geographical information that might be useful in figuring out where crimes are occurring. In short, even as raw data, the posts do not provide useful information for understanding criminal enforcement activity in Maricopa County.

Publishing Houston's mugshot and personal information online is not rationally connected to the County's transparency justification for other reasons, as well. The "Mugshot Lookup" website shows pictures and personal information of recent arrestees only for a three-day period after an arrestee is booked, after which an individual's "Mugshot Lookup" post is removed from the website. If there is a legitimate interest in posting Houston's arrest

record online, such interest is surely frustrated by the brevity of the window during which that information is publicly accessible on the government's website.

Moreover, when evaluated based on government transparency, the County's "Mugshot Lookup" post for Houston is both overinclusive and underinclusive. First, Houston's post includes a significant amount of personal information unconnected to any theory of government transparency. What is the public interest, for example, in publicly disclosing Houston's weight? So, too, with other personal information including his birthdate, height, eye color, and hair color. The County nowhere purports to show, much less succeeds in showing, why this level of granular detail about Houston's body and personal identity rationally furthers an interest in government transparency.

Tellingly, Houston's "Mugshot Lookup" post also omits relevant information. The post includes no descriptions of government activity that would promote understanding of the County's system for apprehending, prosecuting, and convicting criminals. Houston's published arrest record left out a range of pertinent details, including the names of the officers who arrested Houston, the location of his arrest, the arresting agency (in this case, the Phoenix Police Department, not County officials), the jail in which Houston was held, and whether charges were ultimately pursued. The County provides no rationale for *excluding* from Houston's post information about government conduct that would have provided insight into the County's criminal legal system while *including* significant personal information about Houston wholly irrelevant to that goal.

In short, even if transparency is a legitimate government interest, no rational relationship exists between that goal and

the County's gratuitous inclusion of at least some of Houston's personal information in its public "Mugshot Lookup" post. Absent a rational relation between the post and the County's interest, as articulated at this stage of the case, an inference that the post was motivated by punitive intent is plausible and so precludes dismissal. *See Bell*, 441 U.S. at 539. The second prong of the *Bell* test is therefore satisfied. *See Demery*, 378 F.3d at 1028.

We conclude that Houston adequately pleaded a substantive due process claim under *Bell* and *Demery*.

## III.

### A.  Procedural Due Process

"A section 1983 claim based upon procedural due process . . . has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022) (alteration in original) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)). As Houston has not properly pleaded a constitutionally protected interest, his procedural due process claim fails.

The federal Due Process Clause protects certain state-created liberty interests. "[T]he procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter [the] protected status" of interests "initially recognized and protected by state law." *Paul*, 424 U.S at 710-11. Houston does not invoke a federal interest to support his procedural due process claim, so his claim turns on the existence of a state-created liberty interest.

"Not every state law respecting privacy will create a liberty interest protected by the Constitution. 'State law can

create a right that the Due Process Clause will protect only if the state law contains "(1) substantive predicates governing official decisionmaking, and (2) explicitly mandatory language specifying the outcome that must be reached if the substantive predicates have been met."'" *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1155 (9th Cir. 2012) (quoting *James v. Rowlands*, 606 F.3d 646, 656 (9th Cir. 2010)). The lodestar of *Marsh*'s two-prong inquiry into a state-created interest for procedural due process purposes is thus the parameters of the relevant state law.

Houston argues that the Arizona Supreme Court recognized a liberty interest in the privacy of "personal information including birthdates" in *Scottsdale Unified School District No. 48 of Maricopa County v. KPNX Broadcasting Co.*, 955 P.2d 534 (Ariz. 1998). *Scottsdale* held that school districts could refuse a news station's request under Arizona's Public Records Law for records containing public schoolteachers' birthdates. *Id*. at 540. But *Scottsdale*'s holding concerning what information a government entity may refuse to disclose under the Public Records Law cannot directly translate into the principle that such information is protected from disclosure as private should a government entity choose to reveal it.[7]

We need not pursue further whether there is any basis in Arizona law for a substantive privacy-based interest in nondisclosure of one's birthdate. In any event, Houston's procedural due process claim fails the *Marsh* inquiry's

---

[7] This different context is why the district court's focus on availability of a "special action" under the Public Records Law is inapt. Such an action is unavailable because Houston, unlike the news station in *Scottsdale*, is not *requesting* records.

second prong, which requires mandatory language directing a certain outcome if specified substantive conditions are met.

The statute in *Marsh* straightforwardly removed government discretion, with its mandatory ban on reproducing autopsy photos without court approval or a particular exemption. *See Marsh*, 680 F.3d at 1156. In contrast, *Scottsdale* does not contain the requisite "explicitly mandatory language specifying the outcome that must be reached if the substantive predicates [viz. inclusion of an individual's birthdate in a government record] have been met." *Id.* at 1155 (quoting *James*, 606 F.3d at 656). *Scottsdale* held that the school districts were not *required* to disclose the requested information under the Public Records Law but nowhere suggested that the districts were *forbidden* from doing so voluntarily. Instead*, Scottsdale* noted that, if privacy interests are sufficiently weighty, "the State *can* properly refuse inspection" of public records. 955 P.2d at 537 (emphasis added).

So, unlike the autopsy statute in *Marsh*, neither *Scottsdale* (nor any other cited authority) "specif[ies] the outcome that must be reached" once the asserted substantive predicate giving rise to a privacy interest—a record's inclusion of someone's birthdate—is met. *Marsh*, 680 F.3d at 1155 (quoting *James*, 606 F.3d at 656). The outcome-controlling mandatory language required under the second *Marsh* prong is entirely absent. Accordingly, Houston's complaint cannot satisfy the *Marsh* inquiry. The complaint therefore fails to demonstrate the existence of a state-created liberty interest in the privacy of one's birthdate cognizable under the Due Process Clause's procedural protections.

To the extent Houston advances a second theory of liability based on reputational harm as a denial of procedural

due process, he again has not plausibly pleaded a claim. "[P]rocedural due process protections apply to reputational harm only when a plaintiff suffers stigma from governmental action plus alteration or extinguishment of 'a right or status previously recognized by state law.'" *Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170, 1185 (9th Cir. 2008) (quoting *Paul*, 424 U.S. at 711), *rev'd on other grounds*, 562 U.S. 29 (2010). Here, Houston has pleaded stigmatic harm to his reputation, but, for the reasons described above, has not shown that the County's post "distinctly altered or extinguished" a privacy interest in his birthdate recognized by state law. *Paul*, 424 U.S. at 711.

In sum, Houston has not demonstrated that the County's "Mugshot Lookup" post implicated a cognizable "liberty or property interest" grounded in state law. *Armstrong*, 22 F.4th at 1066 (quoting *Portman*, 995 F.2d at 904). He therefore cannot make out a § 1983 procedural due process claim. *See id.* The district court correctly dismissed that claim.

## B. Sixth Amendment

Nor does Houston's complaint state a plausible Sixth Amendment claim. He alleged that the County punished him, in violation of his right to a speedy public trial, by posting his personal information on its "Mugshot Lookup" page before an adjudication of guilt. As Houston was not prosecuted and had no trial, no speedy trial right was violated.

The Speedy Trial Clause is largely concerned with preserving a defendant's ability to "present an effective defense." *United States v. Marion*, 404 U.S. 307, 320 (1971). The Clause also protects the "right to trial before an impartial jury." *Murray v. Schriro*, 882 F.3d 778, 802 (9th Cir. 2018). When charges are dropped, "the speedy trial guarantee is no

longer applicable," as the individual no longer faces a public accusation. *United States v. MacDonald*, 456 U.S. 1, 8 (1982). Any harm from delay incurred before charges are dismissed falls instead under the ambit of the Due Process Clause. *See id.* at 7.

Houston's charges, as he acknowledges, were dropped soon after his arrest. He cites *United States v. Loud Hawk*, 474 U.S. 302 (1986), as recognizing a right to be free from undue public accusation even if ultimately vindicated, but *Loud Hawk* is to the contrary. In that case, ninety months passed between Loud Hawk's arrest and indictment. *See id.* at 304. *Loud Hawk* stated that, although the Sixth Amendment protects an accused person against "undue and oppressive incarceration prior to trial," such protection no longer applies if charges are ultimately dismissed. *Id.* at 312-13 (quoting *United States v. Ewell*, 383 U.S. 116, 120 (1966)). Once an individual "is no longer the subject of public accusation," the Sixth Amendment is not apposite. *Id.* at 311 (quoting *MacDonald*, 456 U.S. at 9) (alteration omitted). Because Houston has "no charges outstanding," his Sixth Amendment claim is not viable. *Id.* (quoting *MacDonald*, 456 U.S. at 9).

## Conclusion

The state may not punish pretrial detainees without an adjudication of guilt. Houston plausibly pleaded a substantive due process claim against the County based on pretrial punishment. We therefore reverse the district court's dismissal. We affirm that court's dismissal of Houston's procedural due process and Sixth Amendment claims.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for proceedings consistent with this opinion.